Filed 07/03/24

## STATE OF VERMONT

SUPERIOR COURT                                        CIVIL DIVISION
Windham Unit                                          Docket No. 21-CV-4001


SALINA COBB AND JUSTIN COBB,
        Plaintiffs
v.

LINDA PARKER, MYRNA WILKINS,
MELBOURNE WILLIAMS, AND
BETSEY FOSTER,
        Defendants


## DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The fundamental dispute between the parties is whether there is an enforceable contract between them for the sale of a residence. Both parties have filed motions for summary judgment on this issue. The outcome of related claims depends largely on the resolution of this issue.[1] The respective Statements of Undisputed Material Facts and responses to those statements show that while there are disagreements as to details and collateral matters, the material facts related to this primary issue are undisputed.

### Undisputed Material Facts

In 2015, Salina and Justin Cobb rented a house in Londonderry that was owned by Defendants Linda Parker, Myrna Wilkins, Melbourne Williams, and Betsey Foster. It had been acquired by the Defendants as joint tenants with right of survivorship by deed of 1995. The lease to the Cobbs was signed only by Myrna Wilkins, but the first paragraph identified all four owners. The initial rent was $800 per month but later increased to $900 per month.

During the course of the tenancy, some repairs to the premises were required to maintain it in a condition to rent. Based on comments from Myrna Wilkins, the Cobbs were concerned that they might lose the ability to continue to rent the property if the owners decided to not make repairs and to stop renting, and they started participating in repairs themselves. Justin Cobb is a carpenter and worked on the building himself. He also arranged for and supervised other contractors. Defendants paid for some materials and contractors. They also paid Mr. Cobb for at least some of his work. There was no specific agreement, and the Cobbs did not present any invoices for labor or repairs. Rather, Mr. Cobb orally advised Ms. Wilkins of his hours and charges and was paid. The Cobbs also paid for some repairs themselves without repayment.

In 2020 Myrna Wilkins discussed the possibility of selling the property to the Cobbs but Salina Cobb did not believe that she was serious. In March of 2021, Ms. Wilkins offered to sell

---

[1] There is also an eviction case, 22-CV-314, that has been consolidated with this case as well as a damages claim.

1

the property to the Cobbs for $130,000. The Cobbs moved forward to secure financing. Salina Cobb first tried a local bank but could not obtain a loan due to a mobile home on the property belonging to the Defendants' niece. She then pursued financing on-line with Rocket Mortgage. No realtors or lawyers were involved.

On May 27, 2021 the Cobbs signed a preprinted form contract entitled "Simple Real Estate Contract" to purchase the property for $130,000. It provided for a financing condition. Myrna Wilkins was identified on the third line from the top as Seller. No other sellers were named. The contract was signed by Myrna Wilkins on June 20, 2021 and only by her. Someone from Rocket Mortgage advised the Cobbs that a single signature was enough to move forward. The closing was originally planned to take place in June of 2021. Plaintiffs understood that their security deposit would be used to cover rent until the closing actually occurred.

The Cobbs obtained an appraisal in connection with their pursuit of financing. It showed property value of $170,000. To obtain an FHA loan through Rocket Mortgage, they were required to sign an FHA Purchase Agreement Addendum and to obtain the signatures of the sellers on it. The top of the document reads as follows:

"This addendum dated 6/21/21 is an addendum to a purchase agreement dated [blank space] between Salina Cobb and Justin Cobb {Purchaser(s)} and Linda A. Williams AKA Linda Parker

| Linda A. Williams AKA Linda Parker | Melbourne Williams | Myrna Y. Wilkins | Betsey U. Foster | {Seller(s)} for the property |

located at 28 Pine Tree H1, Londonderry, VT 05148-9645."

Paragraph 2 of the document is as follows:

**"Real Estate Certification.** The seller, the purchaser, and the real estate agent or broker hereby certify that the terms of the sales contract are true to the best of their knowledge and belief and it is agreed that any other agreement entered into by any of the parties is fully disclosed and attached to the sales contract."

The document was DocuSigned by Linda A. Williams aka Linda Parker on 8/23/21 and the initials "MW" appear as DocuSigned on 8/23/21 over the words 'Linda Parker' but above the printed name of Melbourne Williams. The document was signed in person on 8/26/21 by Salina Cobb, Justin Cobb, Myrna Wilkins, and Betsey U. Foster. Comparable signatures of the same dates appear on a one-page disclosure form concerning lead-based paint.

In September or October of 2021, the Plaintiffs were notified that not all Defendants wanted to sell the property. In particular, Linda Parker wanted to back out.

Salina Cobb wrote to Linda Parker seeking reimbursement for costs and expenses, less unpaid rent to date, in the amount of $3,823.75 and she represented that ongoing rent would be deducted first from this amount.

Ms. Wilkins is now deceased. The Cobbs seek specific performance to purchase the property and assert a claim for money damages. Defendants deny a contractual obligation and have filed a case for eviction which has been consolidated with this case.

## Analysis

Plaintiffs' Amended Complaint includes four counts: Breach of Contract, Unjust Enrichment, Monetary Damages, and Specific Performance. Defendants seek summary judgment on all four counts. Plaintiffs seek partial summary judgment of specific performance of the contract. They recognize that the original 'Simple Contract' document was not signed by all owners but they claim that three documents (the Simple Real Estate Contract, the FHA Purchase Agreement Addendum, and the Lead Paint Disclosure) together make up a single contract that binds the Defendants. The primary issue is thus whether Defendants have a binding contractual obligation to sell the property to the Plaintiffs.

Plaintiffs rely on the combination of the three documents as constituting a single contract that satisfies the Statute of Frauds, 12 V.S.A. § 181 (5), which requires a signed writing to bind a seller of land. They argue that the Restatement provides that a "memorandum" of a contract may consist of several documents even though not all of them are signed and even though no one of them is a sufficient memorandum. "At least one must be signed by the party to be charged, and the documents and circumstances must be such that the documents can be read together as 'some memorandum or note' of the agreement." *Restatement (Second) of Contracts,* § 132 (1981). Plaintiffs argue that the documents should be linked together as part of one unified contract since each party has signed at least one of the documents.

There are problems with this proposed interpretation. First, the Statute of Frauds requires that a contract for the sale of land must be signed by the "party to be charged." Three of the owners did not sign the "Simple Real Estate Contract" agreement at any time. The "Addendum" document they signed in August could possibly be construed as an addendum to an enforceable contract if it cross referenced an accurate document with specific obligations, but it does not. It begins by referring to an unidentified and nonexistent purchase agreement between the Cobbs and four named persons as sellers. Not only is there no identifying date of a contract but three of those named persons never signed any purchase and sales agreement. Even in the paragraph 2 certification, the signers of the "Addendum" do not certify that they are obligated to sell the property pursuant to the document; they merely certify that terms in a document signed by Myrna Wilkins alone are the terms in that document. Those terms show that only Ms. Wilkins agreed to sell the property.

A real estate closing, particularly one with financing, can involve multiple documents that call for signatures of various parties. The fact that all sellers may sign one of the many documents, which may be for a purpose collateral to obligations specified in the contract document, does not automatically mean that in every closing all the documents that are signed over time are linked together into a single unified contract between the buyers and sellers such that every party is obligated to all the terms in the various documents. This would significantly dilute the requirement in the State of Frauds. In this case, the Addendum and lead paint

3

disclosure are simply outside the contract document that purported to create buy-sell obligations. They do not modify or add to the obligations set forth in the preprinted contract form for either the sellers or the buyers. They fulfill separate purposes that are related to the closing but do not affect contract terms.

The Statute of Frauds imposes a clear requirement that a contract for the sale of an interest in real estate is not enforceable unless the seller has agreed in writing to sell. 12 V.S.A. § 181 (5). This applies to each person with an ownership interest in the property and inherently includes the policy that a prospective seller of real estate must make explicit, in a writing, his or her undertaking to sell on specific terms. Plaintiffs have provided no authority for the proposition that the signatures of multiple owners on an addendum that relates to the prospective buyers' financing application is sufficient to satisfy the Statute of Frauds where only one of the multiple owners signed the original purchase and sales contract document, which itself is not identified accurately. The situation would be different if the Addendum had stated something along the lines of 'All four undersigned sellers incorporate and affirm the obligations of Sellers set forth in the "Simple Real Estate Contract" signed by Myrna Wilkins on June 20, 2021.' It did not.

In the case relied on by Plaintiffs, *Prue v. Royer,* 2013 VT 12, although there were separate attached pages to a preprinted contract for sale and an original addendum as well as an additional later addendum, there is no indication that the original document was not signed by both parties. The various addenda modified the obligations of the parties. The issue in the case was the interpretation of the terms of the parties' agreement, not whether or not there was a contract at all. Thus the case does not provide authority for Plaintiffs' position in this case.

Plaintiffs argue that Myrna Wilkins acted with apparent authority as the agent of her siblings in connection with the real estate, and that when all four Defendants ultimately signed the Addendum, they ratified Ms. Wilkins's prior action of signing the Simple Contract on their behalf. This theory would constitute a significant modification or exception to the requirement of the Statute of Frauds. Plaintiffs have presented no authority showing that it has been adopted by any court. The terms of sale that Plaintiffs seek to enforce against Defendants are not set forth in either document that all four Defendants signed, either the Addendum or lead paint disclosure. It is not clear that they had even read them. The purpose of the Statute of Frauds requirement is to assure that the "party to be charged" has explicitly undertaken the obligation at issue and has affirmed doing so in writing.[2]

For these reasons, the court cannot conclude that the Statute of Frauds was satisfied in this case. Thus Plaintiffs do not have a legally enforceable right to purchase the property. Their request for specific performance must be denied, and Defendants are entitled to judgment on Plaintiffs' claims for breach of contract and specific performance.

---

[2] Plaintiffs also argue that Melbourne Williams and Betsey Foster were legally competent to sign the Addendum and lead paint disclosure when they did. Because the above analysis rests on other grounds, there is no need for the court to address the issue. Plaintiffs also argue in their Opposition that, in connection with the eviction claim in 22-CV-314, the notice to terminate the tenancy was defective. This is an issue separate from the legal issues framed by the parties in their respective Motions for Summary Judgment, and thus is not addressed here but may be raised at a court trial in which the eviction case is litigated.

Plaintiffs also seek compensation for unjust enrichment (Count 2) as well as "money damages" (Count 3). This appears to be a single claim rather than two separate ones, as "money damages" are a remedy and not a distinct cause of action. Plaintiffs sought compensation for some repair costs and also claim that the Defendants' signatures on the Addendum and lead paint disclosure caused them to expect a closing with a favorable mortgage interest rate shortly after the documents were signed, and that the delay and failure to honor the Simple Contract caused them to suffer financial harm. The facts are insufficient for a ruling on this claim as a matter of summary judgment. Plaintiffs are entitled to a trial on this claim to present evidence to show whether facts satisfy all the elements of unjust enrichment. Defendants are denied summary judgment on this claim.

Defendants have a claim against Plaintiffs for eviction that is consolidated with this case and has yet to be resolved.

A pretrial status conference will be set to plan for an evidentiary hearing on the remaining claims for unjust enrichment and eviction. The parties are reminded that mediation must be completed prior to a court trial on these issues if that has not already occurred. See ADR Order of December 21, 2023.

### Orders

Defendants' Motion for Summary Judgment (Motion #8) is *granted* in part as set forth above, and otherwise *denied.*

Plaintiffs' Motion for Partial Summary Judgment (Motion #9) is *denied.*

A pretrial conference will be scheduled to plan for a court trial on remaining issues, including the claim in the eviction case, Docket # 22-CV-314. The parties shall have engaged in mediation prior to the court trial.

Electronically signed July 2, 2024 pursuant to V.R.E.F. 9 (d).

Mary Miles Teachout
Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned

5